**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

OSMIN A AYALA,

        Plaintiff,

    v.

SERGIO ALBARRAN, et al.,

        Defendants.

Case No.  26-cv-03092-BLF

**ORDER GRANTING EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER; AND ORDER TO SHOW CAUSE**

[Re: ECF No. 2]

Before the Court is Petitioner Osmin Ayala's Ex Parte Application for a Temporary Restraining Order ("TRO").  ECF No. 2 ("App.").  Mr. Ayala filed his Petition for Writ of Habeas Corpus followed by an Ex Parte Application for Temporary Restraining Order against Respondents Acting Field Office Director of the San Francisco Immigration and Customs Enforcement ("ICE") Office Sergio Albarran, Secretary of the Department of Homeland Security ("DHS") Markwayne Mullin, and United States Attorney General Todd Blanche on April 10, 2026, seeking an order temporarily enjoining Respondents from detaining him until such time as he has had an opportunity to challenge his detention before a neutral decisionmaker.  ECF No. 1 ("Pet.").

The application is GRANTED.

## I.   BACKGROUND

According to the petition and request for TRO submitted by Mr. Ayala, Mr. Ayala is an asylum seeker who fled El Salvador with his family due to threats to their lives from gang members and have been in the United States for more than four years.  Mr. Ayala has no criminal history.  He was initially detained and later released in July 2021.  Mr. Ayala was released with an order to comply with periodic check-ins with ICE pursuant to his order of supervision.  He

submitted his application for asylum on May 9, 2022, and later received work authorization based on his pending application.

On April 20, 2023, Mr. Ayala applied for a U nonimmigrant visa as a derivative on his wife's application after she was the victim of a violent crime. On March 20, 2025, USCIS determined that Mr. Ayala's wife's application for a U Nonimmigrant Visa was bona fide. USCIS further found that placing Mr. Ayala in deferred action was warranted as a matter of discretion. The notice describes deferred action as an act of administrative convenience by which the government officially designates some cases as lower priorities for removal. To date, USCIS has not terminated the March 20, 2025, grant of deferred action.

In mid-June 2025, Mr. Ayala received notice of an appointment at the San Francisco ICE Field Office for June 25, 2025. He attended with counsel. ICE issued an Order of Supervision alleging that he had been ordered removed on May 2, 2019, but was "being released because the agency has not effected [his] deportation or removal during the period prescribed by law." Among other conditions, the Order of Supervision required Mr. Ayala to check-in with the San Francisco ICE Field Office every three months. When counsel requested a copy of the referenced 2019 order and any other final orders of removal, ICE indicated that they "did not have his A-file" and therefore could not provide anything. Mr. Ayala was ordered to report to the San Francisco ICE Field Office on September 25, 2025, which he did.

At the appointment on September 25, 2025, ICE provided Mr. Ayala Form M-488 which has detailed information about the Reasonable Fear Interview process which applies to individuals subject to certain types of final orders of removal who fear return. Counsel again asked for a copy of the final order of removal to which Mr. Ayala was allegedly subject. ICE again stated that they did not have his A-file and therefore did not have a copy of the order. ICE confirmed that the Order of Supervision issued on June 25, 2025, was not being revoked and Mr. Ayala was required to return to the ICE Field Office in three months, on October 27, 2025. Mr. Ayala attended his next scheduled ICE check-in early, on October 21, 2025. After conducting a brief interview, ICE provided Mr. Ayala a 1-page document titled "Notice of Reinstatement/Decision to Reinstate Prior

United States District Court
Northern District of California

Order." The document refers to a removal order entered on July 25, 2019, but no copy of that order was attached or included or served on Mr. Ayala or counsel at any point.

On February 4, 2026, USCIS dismissed Mr. Ayala's asylum application and advised that his claim of fear would be considered by an asylum officer pursuant to the reasonable fear screening process outlined at 8 C.F.R. § 208.31. Shortly thereafter, Mr. Ayala and counsel received notice of a reasonable fear interview scheduled for April 13, 2026, at the San Francisco Asylum Office located at 75 Hawthorne Street, 7th Floor, San Francisco, California 94105.

Subsequently, through the SmartLINK application, Mr. Ayala received notice of an appointment with the ICE Field Office at 630 Sansome Street, San Francisco, California 94611, on April 13, 2026, at 8:00 a.m. Confused as to where the scheduled reasonable fear interview was to take place, counsel reached out to both the San Francisco ICE Field Office and the San Francisco Asylum Office. The San Francisco Asylum Office confirmed via email that the reasonable fear interview will take place on April 13, 2026, at 75 Hawthorne Street.

Mr. Ayala alleges that his arrest and imminent detention have caused immense psychological, economic, and physical harm, including deprivation of hygiene, sleep, and nutrition.

## II.    LEGAL STANDARD

The standard for issuing a temporary restraining order is identical to the standard for issuing a preliminary injunction. *See Washington v. Trump*, 847 F.3d 1151, 1159 n.3 (9th Cir. 2017) ("[T]he legal standards applicable to TROs and preliminary injunctions are substantially identical." (internal quotation marks and citation omitted)). An injunction is a matter of equitable discretion and is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 22 (2008). And "a TRO 'should be restricted to . . . preserving the status quo and preventing irreparable harm just so long as is necessary to hold a [preliminary injunction] hearing and no longer.'" *E. Bay Sanctuary Covenant v. Trump*, 932 F.3d 742, 779 (9th Cir. 2018) (quoting *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70*, 415 U.S. 423, 439 (1974)).

A plaintiff seeking preliminary injunctive relief must establish "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter*, 555 U.S. at 20. "[I]f a plaintiff can only show that there are serious questions going to the merits—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the balance of hardships tips *sharply* in the plaintiff's favor, and the other two *Winter* factors are satisfied." *Friends of the Wild Swan v. Weber*, 767 F.3d 936, 942 (9th Cir. 2014) (internal quotation marks and citations omitted). "[W]hen the Government is the opposing party," the final two factors "merge." *Nken v. Holder*, 556 U.S. 418, 435 (2009).

## III.    DISCUSSION

As a preliminary matter, the Court finds that the requirements for issuing a temporary restraining order without notice set out in Federal Rule of Civil Procedure 65(b)(1) are met in this case. Mr. Ayala's counsel has set out specific facts showing that immediate and irreparable injury, loss, or damage may result before the adverse party can be heard in opposition.

The Court finds that Mr. Ayala has shown at least that there are "serious questions going to the merits" and that "the balance of hardships tips *sharply*" in his favor. *Weber*, 767 F.3d at 942. Under the Due Process Clause of the Fifth Amendment to the United States Constitution, no person shall be "deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) (citing *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992)).

Courts have previously found that individuals released from immigration custody on bond have a protectable liberty interest in remaining out of custody on bond. *See Rivera v. Albarran*, No. 25-cv-10474-BLF, 2025 WL 3496778, at *1 (N.D. Cal. Dec. 5, 2025)

*Ortiz Vargas v. Jennings*, No. 20-cv-05785, 2020 WL 5074312, at *3 (N.D. Cal. Aug. 23, 2020); *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 969 (N.D. Cal. 2019) ("Just as people on preparole, parole, and probation status have a liberty interest, so too does Ortega have a liberty interest in remaining out of custody on bond."); *Romero v. Kaiser*, No. 22-cv-02508, 2022 WL

United States District Court
Northern District of California

4

1443250, at *2 (N.D. Cal. May 6, 2022) ("[T]his Court joins other courts of this district facing facts similar to the present case and finds Petitioner raised serious questions going to the merits of his claim that due process requires a hearing before an IJ prior to re-detention."); *Jorge M. F. v. Wilkinson*, No. 21-cv-01434, 2021 WL 783561, at *2 (N.D. Cal. Mar. 1, 2021).

For similar reasons as those discussed in the aforementioned cases, this Court finds that the three factors relevant to the due process inquiry set out in *Mathews v. Eldridge*, 424 U.S. 319 (1976)—"the private interest that will be affected by the official action," "the risk of an erroneous deprivation . . . and the probable value, if any, of additional or substitute procedural safeguards," and "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail," *id.* at 335—require that Mr. Ayala be immediately released from custody, and that he be given notice and a pre-detention hearing before a neutral decisionmaker prior to being taken back into custody.

Mr. Ayala has a substantial private interest in remaining out of custody, which would allow him to live at home, work, and continue to provide for his family. *See Morrissey v. Brewer*, 408 U.S. 471, 482 (1972). There is also a risk of erroneous deprivation that the additional procedural safeguard of a pre-detention hearing would help protect against. Like other courts in this district, this Court concludes that the government's interest in re-detaining Mr. Ayala without a hearing is "low," particularly in light of the fact that he has appeared for prior immigration hearings and does not have a criminal record. *See Jorge M.F.*, 2021 WL 783561, at *3; *Ortega*, 415 F. Supp. 3d at 970. Mr. Ayala is also likely to suffer immediate and irreparable harm in the absence of preliminary relief. The Ninth Circuit has recognized "irreparable harms imposed on anyone subject to immigration detention," including "the economic burdens imposed on detainees and their families as a result of detention." *Hernandez v. Sessions*, 872 F.3d 976, 995 (9th Cir. 2017). Those risks are present here.

Finally, the balance of the equities and the public interest, which merge because the government is the opposing party, tip sharply in Mr. Ayala's favor. "[T]he public has a strong interest in upholding procedural protections against unlawful detention, and the Ninth Circuit has recognized that the costs to the public of immigration detention are staggering." *Jorge M. F.*,

2021 WL 783561, at *3 (cleaned up) (quoting *Ortiz Vargas*, 2020 WL 5074312, at *4, and then quoting *Hernandez*, 872 F.3d at 996); *see also Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005) ("Generally, public interest concerns are implicated when a constitutional right has been violated, because all citizens have a stake in upholding the Constitution.").

Without the requested injunctive relief, Mr. Ayala faces deprivation of his liberty.  The comparative harm potentially imposed on Respondents is minimal—a mere short delay in detaining Mr. Ayala, should the government ultimately show that detention is intended and warranted.  Moreover, a party "cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations." *Zepeda v. U.S. Immigr. & Nat. Serv.*, 753 F.2d 719, 727 (9th Cir. 1983). This Court therefore joins a series of other district courts that have recently granted TROs barring the government from detaining noncitizens who have been on longstanding release in their immigration proceedings, without first holding a pre-deprivation hearing before a neutral decisionmaker.  *See, e.g., Oliveros v. Kaiser*, No. 25-cv-07117-BLF, 2025 WL 3290223 at *2 (N.D. Cal. Aug. 22, 2025); *Diaz v. Kaiser*, No. 25-cv-05071, 2025 WL 1676854, at *2 (N.D. Cal. June 14, 2025); *Garcia v. Bondi*, No. 25-cv-05070, 2025 WL 1676855, at *3 (N.D. Cal. June 14, 2025).

Although Mr. Ayala filed his application while detention was imminent (instead of immediately after detention), his liberty interest is equally serious, the risk of erroneous deprivation is likewise high, and the government's interest in continuing to detain him without the required hearing is low.  *See Doe v. Becerra*, No. 25-cv-00647-DJC-DMC, 2025 WL 691664, at *6 (E.D. Cal. Mar. 3, 2025) (granting a TRO as to an individual who had been detained over a month earlier).  Mr. Ayala's requested relief is required to return him to the status quo.  The status quo refers to "the last uncontested status which preceded the pending controversy." *Doe v. Noem*, No. 25-cv-00633, 2025 WL 1141279, at *9 (W.D. Wash. Apr. 17, 2025) (citing *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1210 (9th Cir. 2000)); *see also Kuzmenko v. Phillips*, No. 25-cv-00663, 2025 WL 779743, at *2 (E.D. Cal. Mar. 10, 2025).

Accordingly, the Court hereby GRANTS Mr. Ayala's Ex Parte Motion for a Temporary Restraining Order.  Under Federal Rule of Civil Procedure 65, a court "may issue a preliminary

United States District Court
Northern District of California

6

injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c).  The rule "invests the district court 'with discretion as to the amount of security required, if any,'" and the court "may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003) (quoting *Barahona–Gomez v. Reno*, 167 F.3d 1228, 1237 (9th Cir. 1999)).  In this case, in light of the minimal risk of harm to the government, the Court determines that security is not required.

## IV.   ORDER

IT IS HEREBY ORDERED that:

(1) Mr. Ayala's request is GRANTED to preserve the status quo pending further briefing and a hearing on this matter.

(2) Respondents are ENJOINED from transferring Mr. Ayala out of this district or deporting him pending these proceedings.

(3) Respondents are ENJOINED AGAINST detaining Mr. Ayala and ENJOINED AND RESTRAINED from re-detaining Mr. Ayala without notice and a pre-deprivation hearing before a neutral decisionmaker.  In the event he has been detained before this order has issued, he is ORDERED released.  This Order shall remain in effect until April 24, 2026, at 3:00 p.m.

(4) The Petition for Writ of Habeas Corpus, Motion for Temporary Restraining Order, and this Order SHALL be served on Respondents such that they receive actual notice as soon as practicable, and no later than April 13, 2026, at 5:00 p.m., and Mr. Ayala shall file proof of such service by no later than April 14, 2026, at 5:00 p.m.  Email service is permitted.

(5) Respondents shall provide a status report confirming Mr. Ayala's release by April 10, 2026, at 5:00 p.m.

(6) Respondents are ORDERED TO SHOW CAUSE in-person at a hearing before the undersigned on April 23, 2026, at 9:00 a.m., why a preliminary injunction should not

issue.  Respondents shall file a response to Mr. Ayala's motion by no later than April 15, 2026, at 12:00 p.m.  Mr. Ayala may file a reply by April 20, 2026, at 10:00 a.m.

**IT IS SO ORDERED.**

Dated:  April 10, 2026, at 2:11 p.m.

_____
BETH LABSON FREEMAN
United States District Judge