United States District Court
Northern District of California

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

OSMIN A AYALA,

        Plaintiff,

        v.

SERGIO ALBARRAN, et al.,

        Defendants.

Case No.  5:26-cv-03092-BLF

**ORDER GRANTING MOTION FOR PRELIMINARY INJUNCTION**

[Re:  ECF No. 13]

Petitioner Osmin Ayala filed a petition for writ of habeas corpus against Respondents Immigration and Customs Enforcement ("ICE") San Francisco Field Officer Director Sergio Albarran, Department of Homeland Security ("DHS") Secretary Markwayne Mullin, and Acting Attorney General Todd Blanche on April 10, 2026.  ECF No. 1 ("Pet.").  Mr. Ayala simultaneously filed his *ex parte* motion for a temporary restraining order ("TRO").  ECF No. 2; *see also* ECF No. 2-2 ("Mot.").  The same day, the Court issued a TRO enjoining Respondents from detaining Mr. Ayala without notice and a pre-deprivation hearing before a neutral decisionmaker and ordered Respondents to show cause why a preliminary injunction should not issue.  ECF No. 7 ("Order").  The Court heard oral argument on April 23, 2026.  ECF No. 16.

For the reasons stated on the record and set forth below, Mr. Ayala's motion for a preliminary injunction is GRANTED.

## I.    BACKGROUND

Mr. Ayala is an asylum seeker who fled El Salvador with his family after gang members threatened to kill them.  Pet. ¶ 3.  Mr. Ayala and his family have lived in Oakland, California, since July 2021.  Pet. ¶ 2.  Mr. Ayala has no criminal history.  Pet. ¶ 24.  He was initially detained and later released in July 2021 and released with an order to comply with periodic check-ins with

ICE pursuant to his Order of Supervision. Pet. ¶ 4. He submitted his application for asylum on May 9, 2022, and later received work authorization based on his pending application. Pet. ¶ 5. On April 20, 2023, Mr. Ayala applied for a U nonimmigrant visa as a derivative on his wife's application after she was the victim of a violent crime. *See id.* On March 20, 2025, United States Citizenship and Immigration Services ("USCIS") determined that Mr. Ayala's wife's application for a U Nonimmigrant Visa was bona fide and placed Mr. Ayala in lawful deferred action status. Pet. ¶¶ 5, 24. To date, USCIS has not terminated the grant of deferred action.

In June 2025, Mr. Ayala received notice of an appointment at the San Francisco ICE Field Office for June 25, 2025, and attended with counsel. Pet. ¶ 6. ICE issued an Order of Supervision stating that Mr. Ayala had been ordered removed on May 2, 2019, but was "being released because the agency has not effected [his] deportation or removal during the period prescribed by law." *Id.* Among other conditions, the Order of Supervision required Mr. Ayala to check-in with the San Francisco ICE Field Office every three months. When counsel requested a copy of the referenced 2019 order and any other final orders of removal, ICE indicated that it "did not have his A-file" and therefore could not provide anything. *Id.*

Mr. Ayala was ordered to report to the San Francisco ICE Field Office on September 25, 2025, which he did. Pet. ¶ 6. Counsel again asked for a copy of the final order of removal to which Mr. Ayala was allegedly subject, and ICE again stated that it did not have his A-file and therefore did not have a copy of the order. Pet. ¶ 7. ICE confirmed that the Order of Supervision issued on June 25, 2025, was not being revoked. *Id.* Mr. Ayala attended his next scheduled ICE check- on October 21, 2025, and after a brief interview, ICE provided Mr. Ayala a one-page document titled "Notice of Reinstatement/Decision to Reinstate Prior Order" that referred to a removal order entered on July 25, 2019. Pet. ¶ 8. No copy of that order was attached or served on Mr. Ayala or his counsel at any point. *See id.* & n.2.

On February 4, 2026, USCIS dismissed Mr. Ayala's asylum application and advised that his claim of fear would be considered by an asylum officer pursuant to the reasonable fear screening process. Pet. ¶ 9. Shortly thereafter, Mr. Ayala received notice of a reasonable fear interview scheduled for April 13, 2026, at the San Francisco Asylum Office. Subsequently,

through the SmartLINK application, Mr. Ayala received notice of an appointment with the ICE Field Office. Pet. ¶ 10. Confused as to where the scheduled reasonable fear interview was to take place, counsel reached out to both the San Francisco ICE Field Office and the San Francisco Asylum Office, and the San Francisco Asylum Office confirmed via email that the reasonable fear interview would take place on April 13, 2026, at the San Francisco Asylum Office. Pet. ¶ 10.

Fearing that ICE intended to detain him, *see* Pet. ¶ 11, Mr. Ayala sought (and the Court subsequently granted) a TRO enjoining Respondents from detaining him without a pre-deprivation hearing. The Court ordered that the TRO remain in effect until April 24, 2026, and set a hearing on the order to show cause for April 23, 2026. *See* Order at 7. Respondents timely filed a response to the show cause order, and Mr. Ayala filed a reply. *See* ECF No. 13 ("Gov. Br."); ECF No. 14 ("Pet'r Br."). The Court heard oral argument on April 23, 2026, at which time it indicated that it was inclined to grant a preliminary injunction. ECF No. 16. The Court also extended the TRO until May 8, 2026, while the motion remained under submission. ECF No. 17.[1]

## II.    LEGAL STANDARD

Federal courts are courts of limited jurisdiction, with constitutionally and statutorily imposed jurisdictional limits. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978). "[A] plaintiff must plausibly allege all jurisdictional elements" for the Court to have subject-matter jurisdiction over a claim. *Brownback v. King*, 592 U.S. 209, 217 (2021).

The standards for issuing a TRO and preliminary injunction are identical. *See Washington v. Trump*, 847 F.3d 1151, 1159 n.3 (9th Cir. 2017). An injunction is a matter of equitable discretion and is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 22 (2008). A plaintiff seeking preliminary injunctive relief must establish "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of

---

[1] The Court also directed the Parties to file a proposed preliminary injunction order by May 1, 2026. *See* ECF No. 17. Mr. Ayala subsequently filed a notice indicating that he did "not propose any modifications." ECF No. 19.

United States District Court
Northern District of California

preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Id.* at 20. "[W]hen the Government is the opposing party," the final two factors merge. *Nken v. Holder*, 556 U.S. 418, 435 (2009).

## III.    DISCUSSION

### A.  Jurisdiction

#### 1.  Article III

"[T]he 'irreducible constitutional minimum' of standing consists of three elements." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). The plaintiff bears the burden of establishing that he or she "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.*; *see also FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231 (1990). "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*, 578 U.S. at 339 (quoting *Lujan*, 504 U.S. at 560). "A claim is not ripe for adjudication if it rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Texas v. United States*, 523 U.S. 296, 300 (1998) (quoting *Thomas v. Union Carbide Agricultural Products Co.*, 473 U.S. 568, 580–81 (1985)).

Respondents argue that Mr. Ayala lacks standing because he has not suffered a concrete, particularized injury but rather "seek[s] relief for conjectural or hypothetical injuries that [he] believe[s] may occur at some point in the future." Gov. Br. at 7. Respondents frame the same argument in terms of the constitutional ripeness doctrine, urging that the petition is not ripe because "the events of which [he] complain[s] have not occurred may not occur as [he] anticipate[s] or at all." *Id.* Respondents' argument is difficult to take seriously in light of their contradictory statement just a couple pages later citing their "interest in deporting Petitioner" purportedly "outweigh[ing] any interest [he] may have in continuing on release for whatever limited time he has left before being removed." *Id.* at 15. Respondents' argument gives short shrift to their own pattern of escalating measures taken with respect to Mr. Ayala, including their repeated refusal to provide assurances that he will not be detained and their continued litigation of

4

this case.  The argument is particularly ill-taken in light of Respondents' own failure at the hearing to answer the Court's point-blank question whether, absent relief, Mr. Ayala would be at risk of future detention.

The Court accordingly has no trouble in joining other district courts in this Circuit that have rejected Respondents' nearly identical arguments—whether framed as injury-in-fact challenges for the  purpose of standing or future-contingency challenges in the context of ripeness—and concluded that "risk of detention even while the petitioner is still at liberty may provide a sufficient basis to grant emergency relief." *Aghajanyan v. ICE*, No. 25-cv-12255-MWC-JDE, 2026 WL 453477, at \*2 (C.D. Cal. Jan. 21, 2026); *accord Cortez Morales v. Albarran*, No. 25-cv-09241-HSG, 2026 WL 92061, at \*4 (N.D. Cal. Jan. 13, 2026).

### 2.  Federal Habeas Jurisdiction

A court may grant habeas corpus relief to any individual "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3).  "The Supreme Court has 'very liberally construed the "in custody" requirement.'" *Sun v. Santacruz*, No. 25-cv-02198-JLS-JC, 2025 WL 2730235, at \*3 (C.D. Cal. Aug. 26, 2025) (quoting *Maleng v. Cook*, 490 U.S. 488, 492 (1989)).  "A person need not be physically imprisoned to be in custody under the statute; instead, habeas relief is available where the individual is subject to 'restraints not shared by the public generally.'" *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 968 (N.D. Cal. 2019) (quoting *Jones v. Cunningham*, 371 U.S. 236, 240 (1963)).

Respondents obliquely argue that Mr. Ayala is not "in custody" for habeas purposes, appearing to base this contention at least in part that ICE has issued a Notice of Reinstatement in Mr. Ayala's case pursuant to 8 U.S.C. § 1231(b)(5).  Mr. Ayala responds that the conditions imposed upon him are not shared by the public generally and that he is in custody within the meaning of *Jones*.  Pet'r Br. at 4.  Mr. Ayala has been placed under an Order of Supervision that imposes such conditions as attending regularly scheduled in-person check-ins and "reporting via the SmartLINK application's facial recognition technology as well as a GPS ankle monitor."  Pet'r Br. at Ex. A ¶ 4.

These conditions "significantly confine and restrain" Mr. Ayala's freedom, and he is

United States District Court
Northern District of California

United States District Court
Northern District of California

accordingly in custody for the purpose of federal habeas jurisdiction. *Jones*, 371 U.S. at 243. "Faced with conditions identical to those imposed here, multiple courts have concluded that the requirements of 'custody' are easily satisfied." *Harrington v. Albarran*, No. 26-cv-01889-JST, 2026 WL 800113, at *4 (N.D. Cal. Mar. 23, 2026) (collecting cases).

### B.  Preliminary Injunction

#### 1.  Likelihood of Success on the Merits

Substantive due process forbids punitive civil detention. *Jackson v. Indiana*, 406 U.S. 715, 738 (1972).  To comport with substantive due process, immigration detention must bear a reasonable relation to one of its intended purposes, which are to "ensure[] the appearance of aliens at future immigration proceedings and [p]revent[] danger to the community." *Zadvydas v. Davis*, 533 U.S. 678, 690–91 (2001) (second alteration in original) (internal quotation marks and citation omitted).  Procedural due process mandates that civil detention be accompanied by certain procedural protections.  Courts generally analyze procedural due process claims by first determining whether a protected liberty interest exists under the Due Process Clause and then examining what procedures are necessary to ensure that any deprivation of that interest complies with the Constitution. *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989); *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976).

Mr. Ayala argues that detaining him would violate substantive due process because Respondents have found that he is neither a flight risk nor a danger to the community—and accordingly neither regulatory purpose of immigration detention would be served by his detention—on at least four occasions: "first, when [the Government] released him in 2021; second, when it accepted his affirmative asylum application and issued work authorization; third, when it granted him deferred action and employment authorization; fourth, when it issued an order of supervision." Mot. at 3.  Mr. Ayala argues that procedural due process also prohibits Respondents from detaining him "unless they can prove at a hearing before a neutral adjudicator by clear and convincing evidence that circumstances have materially changed since [Respondents] permitted him to live freely in the United States in July of 2021." *Id.* at 4.  Respondents do not meaningfully respond to Mr. Ayala's due process arguments, instead arguing that he "is not likely

to succeed on his various unlawful re-detention claims because the government has explicit statutory authority to re-detain him for the purposes of effectuating his removal." Gov. Br. at 11.

Respondents are mistaken to the extent that they argue that 8 U.S.C. § 1231, which governs the detention of individuals with final orders of removal, would authorize Mr. Ayala's detention under these circumstances. That provision contemplates continued detention beyond the 90-day mandatory detention period only where "an individual has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal." 8 U.S.C. § 1231(a)(1)(A). That is plainly not the case here, as Respondents have to the contrary repeatedly determined that Mr. Ayala is neither a danger nor a flight risk. Relatedly, Respondents' bizarre invocation of ICE's post-order regulatory framework misapprehends the nature of his habeas petition, *see* Gov. Br. at 17–19, and there is no indication before the Court that Respondents consider Mr. Ayala to have violated a condition of his release.

As the Court explained in granting Mr. Ayala's TRO application, *see* Order at 5, the three factors relevant to the due process inquiry set out in *Mathews* require that he be given notice and a pre-detention hearing before a neutral decisionmaker prior to being detained. Mr. Ayala has a substantial private interest in remaining out of custody, which would allow him to live at home, work, and continue to provide for his family. *See Morrissey v. Brewer*, 408 U.S. 471, 482 (1972). There is also a risk of erroneous deprivation that the additional procedural safeguard of a pre-detention hearing would help protect against. Like other courts in this district, this Court concludes that the government's interest in re-detaining Mr. Ayala without a hearing is "low," particularly in light of the fact that he has appeared for prior immigration hearings and does not have a criminal record. *See Jorge M. F. v. Wilkinson*, No. 21-cv-01434-JST, 2021 WL 783561, at *1 (N.D. Cal. Mar. 1, 2021); *Ortega*, 415 F. Supp. 3d at 970.

Respondents' election to grant Mr. Ayala deferred action status in connection with his derivative U Visa application provides him with a liberty interest that is protected by the Due Process Clause. *See, e.g.*, *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025); *Oliveros v. Kaiser*, No. 25-cv-07117-BLF, 2025 WL 2677125, at *5 (N.D. Cal. Sept. 18, 2025). The straightforward consequence of this is that due process forbids his being detained or removed

7

without a hearing before a neutral arbiter. *See Sepulveda Ayala v. Bondi*, 794 F. Supp. 3d 901, 912 (W.D. Wash. 2025) ("[D]eferred action prevents recipients' removal from the United States." (citing *Lee v Holder*, 599 F.3d 973, 974–75 (9th Cir. 2010)); *J.L.R.P. v. Wofford*, No. 25-cv-01464-KES-SKO (HC), 2025 WL 3190589, at *10 (E.D. Cal. Nov. 14, 2025) (applying the *Mathews* factors and concluding that "re-detention without such a hearing violates the Due Process Clause").

### 2.  Remaining *Winter* Factors

Mr. Ayala has demonstrated that the remaining *Winter* factors tilt sharply in his favor.  As to the second *Winter* factor, "[i]t is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017) (quoting *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)).  As to the third and fourth *Winter* factors, which merge in this case against the Government, "[t]he public has a strong interest in upholding procedural protections against unlawful detention, and the Ninth Circuit has recognized that the costs to the public of immigration detention are staggering." *Diaz v. Kaiser*, No. 25-cv-05071-BLF, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025).

While the Court is mindful that the burden at all times remains on Mr. Ayala as the moving party to show that the *Winter* factors support injunctive relief, it is also notable that Respondents' briefing on the remaining factors is unpersuasive.  Contra Respondents' peremptory suggestion otherwise, most people would agree that the threat of detention and removal to another country after years of residing in the United States "articulate[s] an irreparable harm." Gov. Br. at 14.

### 3.  Security

"The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c).  The Ninth Circuit has "recognized that Rule 65(c) invests the district court with discretion as to the amount of security required, if any." *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003) (internal quotation marks and citation omitted).  "The district court may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the

defendant from enjoining his or her conduct." *Id.* Because the Court perceives no prejudice to Respondents resulting from the preliminary injunction, the Court finds it appropriate to issue the preliminary injunction without requiring security.

## IV. ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that:

(1) The motion is GRANTED. The Court's April 10, 2026, is CONVERTED into a preliminary injunction during the pendency of Mr. Ayala's habeas petition.

(2) Respondents are ENJOINED from transferring Mr. Ayala out of this district or deporting him during the pendency of these proceedings.

(3) Respondents are ENJOINED AGAINST detaining Mr. Ayala and ENJOINED AND RESTRAINED from re-detaining Mr. Ayala without notice and a pre-deprivation hearing before a neutral decisionmaker.

Dated: April 30, 2026

_____
BETH LABSON FREEMAN
United States District Judge

United States District Court
Northern District of California

9