United States District Court
Northern District of California

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

OSMIN A AYALA,
Plaintiff,
v.
SERGIO ALBARRAN, et al.,
Defendants.

Case No. 26-cv-03092-BLF

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**

[Re: ECF No. 1]

Petitioner Osmin Ayala is an asylum-seeker from El Salvador who has lived in the United States since July 2021. On April 10, 2026, Mr. Ayala filed this petition for writ of habeas corpus, arguing that he feared that he would be unconstitutionally detained at his upcoming appointment with Immigration and Customs Enforcement ("ICE") on April 13, 2026. ECF No. 1 ("Pet."); *see also* ECF No. 26 ("Traverse"). Respondents ICE San Francisco Field Office Director Sergio Albarran, Department of Homeland Security ("DHS") Secretary Markwayne Mullin, and Acting Attorney General Todd Blanche (collectively, "Respondents" or "Government") submitted a return in opposition. ECF No. 25 ("Return"). The parties jointly waived a hearing on the merits of the petition and submitted the matter for decision based on the record before the Court. ECF No. 28. For the reasons that follow, the habeas petition is GRANTED.

## I. BACKGROUND

Mr. Ayala is an asylum seeker who fled El Salvador with his family after gang members threatened to kill them. Pet. ¶ 3. Mr. Ayala and his family have lived in Oakland, California, since July 2021. *Id.* ¶ 2. Mr. Ayala has no criminal history. *Id.* ¶ 24. He was initially detained and later released in July 2021 with subsequent periodic check-ins with ICE. *Id.* ¶ 4. He submitted his application for asylum on May 9, 2022, and later received work authorization based

on his pending application. *Id.* ¶ 5. On April 20, 2023, Mr. Ayala applied for a U Nonimmigrant Visa as a derivative on his wife's application after she was the victim of a violent crime. *Id.* On March 20, 2025, United States Citizenship and Immigration Services ("USCIS") determined that his wife's application was bona fide and placed Mr. Ayala in lawful deferred action status. *Id.* ¶¶ 5, 24. To date, USCIS has not terminated the grant of deferred action.

In June 2025, Mr. Ayala received notice of an appointment at the San Francisco ICE Field Office for June 25, 2025, and attended with counsel. *Id.* ¶ 6. ICE issued an Order of Supervision stating that Mr. Ayala had been ordered removed on May 2, 2019, but was "being released because the agency has not effected [his] deportation or removal during the period prescribed by law." *Id.* (alteration in original). Among other conditions, the Order of Supervision required Mr. Ayala to check-in with the San Francisco ICE Field Office every three months. *Id.* When counsel requested a copy of the referenced 2019 order and any other final orders of removal, ICE indicated that it "did not have his A-file" and therefore could not provide anything. *Id.*

Mr. Ayala was ordered to report to the San Francisco ICE Field Office on September 25, 2025, which he did. *Id.* Counsel again asked for a copy of the final order of removal to which Mr. Ayala was allegedly subject, and ICE again stated that it did not have his A-file and therefore did not have a copy of the order. *Id.* ¶ 7. ICE confirmed that the Order of Supervision issued on June 25, 2025, was not being revoked. *Id.* Mr. Ayala attended his next scheduled ICE check-in on October 21, 2025, and after a brief interview, ICE provided Mr. Ayala a one-page document titled "Notice of Reinstatement/Decision to Reinstate Prior Order" that referred to a removal order entered on July 25, 2019. *Id.* ¶ 8. No copy of that order was attached or served on Mr. Ayala or his counsel at any point. *Id.* ¶ 8 & n.2.

On February 4, 2026, USCIS dismissed Mr. Ayala's asylum application and advised that his claim of fear would be considered by an asylum officer pursuant to the reasonable fear screening process. *Id.* ¶ 9. Shortly thereafter, Mr. Ayala received notice of a reasonable fear interview scheduled for April 13, 2026, at the San Francisco Asylum Office. *Id.* Subsequently, through the SmartLINK application, Mr. Ayala received notice of an appointment with the ICE Field Office. *Id.* ¶ 10. Confused as to where the scheduled reasonable fear interview was to take

place, counsel reached out to both the San Francisco ICE Field Office and the San Francisco Asylum Office, and the San Francisco Asylum Office confirmed via email that the reasonable fear interview would take place on April 13, 2026, at the San Francisco Asylum Office. *Id.*

Fearing that ICE intended to detain him, Mr. Ayala sought a TRO enjoining Respondents from detaining him without a pre-deprivation hearing before a neutral decisionmaker. *Id.* ¶ 11. The Court granted the TRO on April 10, 2026, and subsequently issued a preliminary injunction on April 30, 2026, enjoining the Government from re-detaining Petitioner without notice and a pre-deprivation hearing before a neutral decisionmaker, transferring Petitioner out of the district, and deporting Petitioner pending these habeas proceedings. ECF Nos. 7, 21.

## II. LEGAL STANDARD

Federal courts are courts of limited jurisdiction, with constitutionally and statutorily imposed jurisdictional limits. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978). "[A] plaintiff must plausibly allege all jurisdictional elements" for the Court to have subject-matter jurisdiction over a claim. *Brownback v. King*, 592 U.S. 209, 217 (2021).

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., art. I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

## III. DISCUSSION

### A. Jurisdiction

#### 1. Article III

"[T]he 'irreducible constitutional minimum' of standing consists of three elements." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). The plaintiff bears the burden of establishing that he "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.*; *see also FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231 (1990). "To establish injury in fact, a plaintiff must show that he . . . suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*, 578 U.S. at 339 (quoting *Lujan*, 504 U.S. at 560). "A claim is not ripe for adjudication if it rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Texas v. United States*, 523 U.S. 296, 300 (1998) (quoting *Thomas v. Union Carbide Agric. Prods. Co.,* 473 U.S. 568, 580–81 (1985)).

Respondents argue that Mr. Ayala lacks standing because he has not suffered a concrete, particularized injury but rather "seek[s] relief for conjectural or hypothetical injuries that [he] believe[s] may occur at some point in the future." Return at 6. Respondents frame the same argument in terms of the constitutional ripeness doctrine, urging that the petition is not ripe because "the events of which [he] complain[s] have not occurred and may not occur as [he] anticipate[s] or at all." *Id.*

Addressing identical arguments in its preliminary injunction order, the Court observed that Respondents' argument is difficult to take seriously in light of their contradictory statement regarding their "interest in deporting Petitioner" purportedly "outweigh[ing] any interest [he] may have in continuing on release for whatever limited time he has left before being removed." ECF No. 13 at 15. Respondents' argument gives short shrift to their own pattern of escalating measures taken with respect to Mr. Ayala, including their repeated refusal to provide assurances that he will not be detained—including when asked at the preliminary injunction hearing to answer the Court's point-blank question whether, absent relief, Mr. Ayala would be at risk of future detention—and

their continued litigation of this case. *See* Polstein Decl. ¶¶ 3–4, ECF No. 2-1 (attesting that Respondents did not respond to inquiries from Petitioner's counsel regarding whether Petitioner would be re-detained); Der. Decl. ¶ 15, ECF No. 13-1 (attesting that Petitioner was warned that "he would be taken into custody for non-compliance" if he did not seek permission before leaving the GPS zone). Respondents' continued refusal to provide Mr. Ayala with assurances is unlike the facts of *Thai v. Lyons*, the principal case upon which Respondents rely, where such assurances were provided. *See* No. 25-cv-6293-JST, 2026 WL 1303056, at *1 (N.D. Cal. May 12, 2026) ("Respondents confirmed that Thai would not be re-detained at his check-in with ICE . . . [and] Thai [subsequently] withdrew his motion for a temporary restraining order, attesting that he had not been re-detained at the check-in.").

Respondents further argue that Mr. Ayala's claim is impermissibly speculative because he was not arrested when he appeared at the April 13, 2026, check-in. Return at 1. However, the Court's temporary restraining order, issued April 10, 2026, enjoined Respondents from detaining Mr. Ayala. *See* ECF No. 7. Thus, the fact that Respondents did not re-detain Mr. Ayala is merely evidence that they complied with the Court's order, not that they would refrain from re-detaining him absent the injunction.

The Court accordingly has no trouble in joining other district courts in this Circuit that have rejected Respondents' nearly identical arguments—whether framed as injury-in-fact challenges for the purpose of standing or future-contingency challenges in the context of ripeness—and concluded that "risk of detention even while the petitioner is still at liberty may provide a sufficient basis to grant emergency relief." *Aghajanyan v. ICE*, No. 25-cv-12255-MWC-JDE, 2026 WL 453477, at *2 (C.D. Cal. Jan. 21, 2026); *accord Cortez Morales v. Albarran*, No. 25-cv-09241-HSG, 2026 WL 92061, at *4 (N.D. Cal. Jan. 13, 2026).

**2. Federal Habeas Jurisdiction**

A court may grant habeas corpus relief to any individual "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "The Supreme Court has 'very liberally construed the "in custody" requirement.'" *Sun v. Santacruz*, No. 25-cv-02198-JLS-JC, 2025 WL 2730235, at *3 (C.D. Cal. Aug. 26, 2025) (quoting *Maleng v. Cook*,

490 U.S. 488, 492 (1989)). "A person need not be physically imprisoned to be in custody under the statute; instead, habeas relief is available where the individual is subject to 'restraints not shared by the public generally.'" *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 968 (N.D. Cal. 2019) (quoting *Jones v. Cunningham*, 371 U.S. 236, 240 (1963)).

Respondents obliquely argue that Mr. Ayala is not "in custody" for habeas purposes, appearing to base this contention at least in part on the fact that ICE has issued a Notice of Reinstatement in Mr. Ayala's case pursuant to 8 U.S.C. § 1231(b)(5). Return at 7–10. Mr. Ayala responds that the conditions imposed upon him are not shared by the public generally and that he is therefore in custody within the meaning of *Jones*. Traverse at 4–6. Mr. Ayala has been placed under an Order of Supervision that imposes such conditions as attending regularly scheduled in-person check-ins, reporting via the SmartLINK application's facial recognition technology, not being permitted to leave California without advance permission, and wearing a GPS ankle monitor. *Id.*; Polstein Reply Decl. ¶ 4.

These conditions "significantly confine and restrain" Mr. Ayala's freedom, and he is accordingly in custody for the purpose of federal habeas jurisdiction. *Jones*, 371 U.S. at 243. "Faced with conditions identical to those imposed here, multiple courts have concluded that the requirements of 'custody' are easily satisfied." *Harrington v. Albarran*, No. 26-cv-01889-JST, 2026 WL 800113, at *4 (N.D. Cal. Mar. 23, 2026) (collecting cases). The authority cited by Respondents does not convince the Court the depart from these cases. *See* Return at 6–9 (citing *J.P. v. Santacruz*, No. 25-cv-01640-FWS, 2025 WL 2633198, at *2 (C.D. Cal. Aug. 27, 2025); *Ba v. Lyons*, No. 25-cv-2871-CAB, 2026 WL 218936, at *2 (S.D. Cal. Jan. 27, 2026)). In *J.P.*, the court found that petitioner was not "in custody" because the restrictions at issue were unlike wearing a GPS device, reporting requirements, or geographic limitations—the very restrictions to which Mr. Ayala is subject—and therefore insufficient. *See* 2025 WL 2633198, at *2. Thus, *J.P.* supports the conclusion that Mr. Ayala is in custody, not Respondents' argument. Meanwhile, the Court is unpersuaded by *Ba* for the reasons stated in *Harrington*. *See Harrington*, 2026 WL 800113, at *5. Thus, the Court finds that Mr. Ayala is "in custody" within the meaning of 28 U.S.C. § 2241(c)(3) and may pursue habeas relief.

United States District Court
Northern District of California

### B. Merits of the Petition

#### i. Protected Liberty Interest

The threshold issue is whether Mr. Ayala has a constitutionally protected liberty interest such that the Due Process Clause applies. Petitioner argues that he has a protected liberty interest based on his nearly five years of living freely in the United States pursuant to an Order of Supervision, and because the Government granted him deferred action status. *See* ECF No. 2-2 at 5–6 ("Mot."). Respondents argue that 8 U.S.C. § 1231, which governs the detention of individuals with final orders of removal, is consistent with due process and does not statutorily provide for a pre-detention hearing. *See* Return at 10–14.

Under the Due Process Clause of the Fifth Amendment to the United States Constitution, no person shall be "deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas*, 533 U.S. at 690. Accordingly, the Due Process Clause typically "requires some kind of a hearing *before* the State deprives a person of [their] liberty," even when it is lawfully revokable. *Zinermon v. Burch*, 494 U.S. 113, 127 (1990); *see also Ortega*, 415 F. Supp. 3d at 969 ("Just as people on preparole, parole, and probation status have a liberty interest, so too does [a noncitizen] have a liberty interest in remaining out of custody on bond."). Although in some circumstances the initial decision to detain or release an individual may be within the Government's discretion, the decision to release an individual from custody creates "an implicit promise," upon which that individual may rely, that their liberty "will be revoked only if [they] fail[] to live up to the . . . conditions [of release]." *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972); *see also Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) ("[E]ven when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody she has a protected liberty interest in remaining out of custody.").

Applying these principles, the Court concludes that Mr. Ayala has a protected liberty interest in remaining out of custody. Respondents' decision to grant Mr. Ayala deferred action status in connection with his derivative U Visa application and release him under an Order of

Supervision provides him with a liberty interest that is protected by the Due Process Clause. *See, e.g.*, *Pinchi*, 792 F. Supp. 3d at 1032; *Alva v. Kaiser*, No. 25-cv-06676-RFL, 2025 WL 2419262, at *1, 3–4 (N.D. Cal. Aug. 21, 2025) (finding that noncitizen who was subject to a reinstated final order of removal but released on an Order of Supervision had protected liberty interest); *Hernandez Arroyo v. Albarran*, No. 26-cv-06745-BLF, 2026 WL 2059097 (N.D. Cal. July 16, 2026) (same). The straightforward consequence of this is that due process forbids his being detained or removed without a hearing before a neutral arbiter. *See Sepulveda Ayala v. Bondi*, 794 F. Supp. 3d 901, 912 (W.D. Wash. 2025) ("[D]eferred action prevents recipients' removal from the United States." (citing *Lee v Holder*, 599 F.3d 973, 974–75 (9th Cir. 2010)); *J.L.R.P. v. Wofford*, No. 25-cv-01464-KES-SKO, 2025 WL 3190589, at *10 (E.D. Cal. Nov. 14, 2025) (applying the *Mathews* factors and concluding that "re-detention without such a hearing violates the Due Process Clause").

Respondents' principal argument—that 8 U.S.C. § 1231 does not statutorily provide for a pre-detention hearing—misses the mark. *See* Return at 10–13. The absence of certain statutory requirements has no bearing on whether Mr. Ayala has a protected liberty interest under the Constitution based on Respondents' affirmative decision to release him in 2021, grant him deferred action and employment authorization, and issue an Order of Supervision.

**ii. Procedural Due Process**

Mr. Ayala argues that procedural due process prohibits Respondents from re-detaining him "unless they can prove at a hearing before a neutral adjudicator by clear and convincing evidence that circumstances have materially changed since [Respondents] permitted him to live freely in the United States in July of 2021." Mot. at 4. Respondents argue that no additional process is required because detention during deportation proceedings is constitutionally valid, ICE's own post-deprivation procedures are sufficient, and the Government has a strong interest in enforcing immigration laws. Return at 14–18.

In *Mathews v. Eldridge*, the Supreme Court explained that "[p]rocedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment."

424 U.S. 319, 332 (1976). The Supreme Court identified three factors relevant to the due process inquiry: (1) "the private interest that will be affected by the official action," (2) "the risk of an erroneous deprivation . . . and the probable value, if any, of additional or substitute procedural safeguards," and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.* at 335. The Ninth Circuit has recognized that many courts have applied the *Mathews* test in considering due process challenges in the immigration context. *See Rodriguez Diaz*, 53 F.4th 1189, 1206 (9th Cir. 2022). As the Court explained in granting Mr. Ayala's TRO application, *see* ECF No. 7 at 5, it joins others in the Ninth Circuit in applying the *Mathews* factors to determine the constitutionally sufficient procedures to protect Petitioner's liberty interest. *See, e.g.*, *Pinchi*, 792 F. Supp. 3d at 1033–36; *Omer G. G. v. Kaiser*, 815 F. Supp. 3d 1098, 1110–11 (E.D. Cal. 2025).

Here, Mr. Ayala has a substantial private interest in remaining out of custody, which would allow him to live at home, work, and continue to provide for his family. *See Morrissey*, 408 U.S. at 482. This interest is not altered even if Mr. Ayala may be lawfully re-detained with adequate process. *See* Return at 15. There is also a risk of erroneous deprivation that the additional procedural safeguard of a pre-detention hearing would help protect against. *See Singh v. Andrews*, 803 F. Supp. 3d 1035, 1047 (E.D. Cal. 2025); *Alva*, 2025 WL 2419262, at *5. Finally, like other courts in this district, this Court concludes that the government's interest in re-detaining Mr. Ayala without a hearing is low, particularly in light of the fact that he has appeared for prior immigration hearings and does not have a criminal record. *See Jorge M. F. v. Wilkinson*, No. 21-cv-01434-JST, 2021 WL 783561, at *3 (N.D. Cal. Mar. 1, 2021); *Ortega*, 415 F. Supp. 3d at 970.

Having determined that each of the *Mathews* factors favor Mr. Ayala, the Court concludes that if the Government wishes to re-detain Mr. Ayala, it must provide him with a pre-detention hearing before a neutral decisionmaker as required by due process. Mr. Ayala may be detained only if the Government proves by clear and convincing evidence at such a hearing that he poses a flight risk or danger to the community, or that his deportation is imminent. *See Rodriguez Diaz*, 53 F.4th at 1199 (summarizing Ninth Circuit opinions—and calling them into question on separate

grounds—holding that due process requires that the government bear the burden of proving, by clear and convincing evidence, that a noncitizen poses a risk of flight or dangerousness before she can be detained).

**iii. Substantive Due Process**

Mr. Ayala also brings a substantive due process challenge to his detention. Mot. at 2–4. Substantive due process forbids punitive civil detention. *Jackson v. Indiana*, 406 U.S. 715, 738 (1972). To comport with substantive due process, immigration detention must bear a reasonable relation to one of its intended purposes, which are to "ensure[] the appearance of aliens at future immigration proceedings and [p]revent[] danger to the community." *Zadvydas*, 533 U.S. at 690 (second alteration in original) (internal quotation marks and citation omitted).

Mr. Ayala argues that detaining him would violate substantive due process because his detention would neither effectuate removal nor safeguard the community, the two purposes of immigration detention, since Respondents granted him deferred action status meaning that this removal is not imminent and have found that he is not a flight risk or danger to the community on multiple occasions. *See* Mot. at 3. The Court notes that Respondents do not make any arguments to the contrary. *See* Return at 17 ("[T]he only 'changed circumstance' that is relevant is the fact that Petitioner has violated a condition of his release. The government need not otherwise establish that Petitioner is a flight risk or danger."). However, because the procedural due process issue is dispositive, the Court need not address the substantive due process claim. *See Llanes Tellez v. Bondi*, 826 F. Supp. 3d 1141, 1148 (N.D. Cal. 2025).

//

//

United States District Court
Northern District of California

**IV. ORDER**

For the foregoing reasons, IT IS HEREBY ORDERED that:

a. The petition for writ of habeas corpus is GRANTED.

b. Respondents are PERMANENTLY ENJOINED AND RESTRAINED from re-detaining Petitioner without notice and a pre-deprivation hearing before a neutral decisionmaker.

c. The Clerk of the Court SHALL close the case.

Dated: August 18, 2026

BETH LABSON FREEMAN
United States District Judge